In re Jane F. BRADY, formerly known
as Mary Jane Brady, Jane Brady
Gerhart, Debtor.

Jane F. BRADY and James J. O'Connell,
Standing Trustee, Plaintiffs,

v.

TOBIAS KNOBLAUCH PRIVATE
BANK, Defendant.

Bankruptcy No. 81–00638G.

Adv. No. 82–0821G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 30, 1983.

David S. Foulke, Spring House, Pa., for
plaintiff/debtor, Jane F. Brady.

James J. O'Connell, Philadelphia, Pa.,
Chapter 13 Standing Trustee, plaintiff.

James R. Wendelgass, Philadelphia, Pa.,
for defendant, Tobias Knoblauch Private
Bank.

OPINION

EMIL F. GOLDHABER, Bankruptcy
Judge:

The issue in the case *sub judice* is wheth-
er the defendant-bank's proof of claim
should be disallowed because said claim
arises out of a promissory note signed by
the debtor but for which the debtor alleges
there was a failure of consideration. Be-
cause we find that the debtor did not intend
to give the note as payment for a pre-exist-
ing obligation of a third party and since the
defendant-bank extinguished the third par-
ty's obligation with the debtor's loan pro-
ceeds, we conclude that the bank's actions
constituted a failure of consideration.
Therefore, the bank's proof of claim, which
arises from the note, will be disallowed.

The facts of the instant case are as fol-
lows:[1] On October 31, 1978, Jane F. Brady
("the debtor") signed a promissory note
("the note") in favor of the Tobias Knob-

1. This opinion constitutes the findings of fact
and conclusions of law required by Bankruptcy
Rule 7052 (effective August 1, 1983).

lauch Private Bank ("the bank") in exchange, ostensibly, for $60,000.00. Despite having signed the note, it is undisputed that, at the time the note was executed, the debtor: (1) had had no prior relationship with the bank; (2) had not applied for the $60,000.00 loan; and (3) had not spoken with any officer or employee of the bank regarding the $60,000.00 loan. Rather, the debtor had signed said note in her home at the request of her son, Joseph L. Brady, Jr. ("the son"), who informed her that her signature was necessary as an accommodation to him because the bank's lending limit prevented a direct loan to him. The son needed the $60,000.00 to make settlement on a piece of property known as the "Plymouth Meeting property" ("the property").

Prior to the execution of the note, the bank had loaned $60,000.00 to Anthony Brady, the debtor's brother-in-law who was the son's uncle ("the uncle"). After the note was signed by the debtor, the bank used the proceeds from that loan to pay off the pre-existing loans owed by the uncle to the bank. Although it is far from clear, it appears that the $60,000.00 originally disbursed to the uncle was somehow transferred into the son's personal checking account.[2] The son thereafter wrote a personal check to purchase the property. As a result of the bank's actions, the debtor, as reflected by the bank's record, became liable for $60,000.00 and the uncle's pre-existing liability for the said $60,000.00 was extinguished as a result thereof.[3]

The bank thereafter mailed bills for the interest due on the $60,000.00 loan to the debtor at her residence, but it was the son who actually made the payments due on the loan. However, in October of 1979, the note went into default and the bank confessed judgment on the note in December of 1979. Nevertheless, the debtor, on four separate occasions in 1980, made payments to the bank in partial repayment of the loan.

Eventually, the property for which the $60,000.00 loan was made was purchased at sheriff's sale by the bank and it presently holds title to said property. In February of 1982, the debtor filed a petition in the Court of Common Pleas of Montgomery County seeking to open the judgment obtained against her by the bank. However, the debtor had previously filed a petition for an adjustment of her debts under chapter 13 of the Bankruptcy Code ("the Code") on February 23, 1981. The debtor's petition to open judgment was dismissed by the Court of Common Pleas of Montgomery County on November 17, 1981. The bank thereupon filed a proof of claim in the bankruptcy case against the debtor in the amount of $54,098.35. On April 5, 1982, the debtor filed the instant complaint objecting to the bank's claim.[4]

■ Initially, the bank contends that we should dismiss the debtor's complaint because the debtor is barred by the doctrine of *res judicata* from raising the issues set forth in said complaint. The bank relies on the fact that the Court of Common Pleas of Montgomery County dismissed the debtor's "petition to open judgment and for stay of execution and other relief" which petition raised essentially the same issues as are set forth in the debtor's instant complaint.

---

2. The son testified that these funds did arrive in his checking account by the time the closing on the Plymouth Road property occurred. However, the son further testified that he did not know whether the funds were so transferred on account of the uncle's notes or the mother's note. *See* notes of testimony, July 6, 1982, at 58.

3. *See* the testimony of the bank's managing general partner set forth on pages 10 and 11 of this opinion. Moreover, the bank's proposed finding of fact number twenty-one provides:
    21. The Bank credited Anthony Brady's loan account with $60,000, (citation omitted),

marked two notes in the amounts of $50,000 and $10,000 "paid", returned the notes to Anthony Brady, *and notified plaintiff [debtor] of these transactions by sending her a copy of a letter to Anthony Brady* explaining the transactions and enclosing the cancelled notes (emphasis added).
*See* the bank's Supplemental Trial Brief at 5.

4. Procedurally, the filing of a complaint was unnecessary. A mere objection would have sufficed: *See* Rule 701 of the Rules of Bankruptcy Procedure.

However, the aforesaid petition was dismissed after the debtor had filed her petition for relief under the Code. Therefore, we must determine what effect, if any, the ruling of the Court of Common Pleas of Montgomery County had on the instant complaint.

The bank argues that section 362 of the Code, by its terms, only stays proceedings *against* the debtor. Section 362(a) of the Code provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding *against* the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> > \*   \*   \*   \*   \*   \*

11 U.S.C. § 362(a) (1979) (emphasis added). Consequently, the bank reasons that since it was the debtor who filed the state court petition against the bank, section 362(a) does not apply to that state court proceeding and, therefore, the order of the state court should be given full faith and credit. We disagree. In a somewhat similar situation involving the reach of section 362 of the Code, the Court of Appeals for the Third Circuit, in *Assoc. of St. Croix Condo Owners v. St. Croix Hotel,* 682 F.2d 446 (3d Cir.1982), stated:

> Section 362 by its terms only stays proceedings *against* the debtor. The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate. The section does not indicate whether a stay becomes operative when the trial phase of a proceeding against a debtor has already concluded prior to the filing of the petition

in bankruptcy, and the debtor or his adversary takes an appeal. It might be argued that whether an appeal is stayed by section 362 should be determined by whether the appeal is taken 'by' or 'against' the debtor, i.e., whether the debtor is the appellant or appellee. We reject this approach.

*Id.* at 448 (emphasis in original).

and said court further held:

> In our view, section 362 should be read to stay all appeals in proceedings that were *originally brought* against the debtor, regardless of whether the debtor is the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined at its inception. That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs.
>
> Under this test, the instant appeals, since they arise out of an eviction proceeding brought against the debtor Hotel, are subject to the automatic stay imposed by section 362. Since the Bankruptcy Court has not entered an order granting relief from the stay, we hold that section 362 prevents us from proceeding with this appeal (footnote omitted).

*Id.* at 449 (emphasis in original).[5]

Likewise, in the instant case, the debtor's state court petition can be viewed as an appeal arising out of a proceeding which was originally brought against the debtor, i.e., the entry of judgment by the bank against the debtor on the note. Since the debtor's state court petition was dismissed by the Court of Common Pleas of Montgomery County on November 17, 1981, some nine months after the debtor filed her petition under chapter 13 of the Code, we conclude that the Court of Common Pleas of Montgomery County was prevented from entering judgment on the debtor's petition by operation of section 362 of the Code.

---

**5.** *Accord Cathey v. Johns-Manville Sales Corp.,* 711 F.2d 60 (6th Cir.1983). *Contra Accredited Assoc., Inc. v. Shottenfeld,* 162 Ga.App. 575,

292 S.E.2d 417 (1982); *Shop in the Grove Ltd. v. Union Fed. and Loan Ass'n of Miami,* Fla. App., 425 So.2d 1138 (1982).

■ We now turn to the troublesome issue of whether the note in question was supported by consideration. While it seems certain that the son did, in fact, receive $60,000.00 to purchase the property, the bank maintains that there was consideration given in exchange for the note, not on account of the fact that the son received funds, but because the debtor had intended to give the note in payment for the pre-existing obligation of the uncle.[6] In support of this argument, the bank relies on section 3408 of the Pennsylvania Commercial Code, which provides:

> Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (section 3305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. Nothing in this section shall be taken to displace any statute outside this title under which a promise is enforceable notwithstanding lack or failure of consideration.[7] Partial failure of consideration is a defense pro tanto whether or not the failure is in an ascertained or liquidated amount.

13 Pa.Cons.Stat.Ann. § 3408 (Purdon Pamphlet 1983).

It is undisputed that the debtor did not expect to receive the loan proceeds directly. It is also without question that the bank used the loan proceeds to extinguish the pre-existing loan obligation of the uncle.[8] The question is, therefore, whether the debtor intended, at the time she signed the note, that the loan proceeds be used in such a manner. We answer that question in the negative. We are unable to find a shred of evidence establishing that the debtor signed the note so that the uncle's obligation to the bank could be forgiven. Curiously, the bank's position that the debtor had agreed to pay off the uncle's loans is premised on a letter sent by the bank to the uncle (not the debtor) some three weeks after the note in question was signed by the debtor (October 31, 1978). That letter, in its entirety, provides:

November 21, 1978

Mr. Anthony L. Brady
616 Pinetree Rd.
Jenkintown, Pa. 19046

Dr. Mr. Brady:

Bob Wrigley [not a bank employee] has advised me that *you are willing* to have your loan in the outstanding principal amount of $60,000 repaid with the proceeds of a new loan that *we will make* to Mrs. Jane F. Brady. We have transferred from your loan account to hers the outstanding principal balance plus $455 representing interest accrued from November 1, 1978 through November 21, 1978.

I enclose here with your two notes in the face amounts of $10,000 and $50,000, both of which I have marked PAID (emphasis added).

Very truly yours,
/S/
W. Thomas Tither, Jr.
General Partner

cc: Jane F. Brady and Robert Wrigley
WTT/kmf
Enclosure

---

**6.** At page 11 of the bank's "Supplemental Trial Brief", it is stated that "the Bank agreed to forgo pursuit of its claim against Anthony Brady in consideration for Mrs. Brady's entering into the note in question." At page 10 of the same pleading, the bank states, without documentation, that the loan proceeds "were used by Mrs. Brady to repay a prior loan made by the Bank to Anthony Brady." We find no support whatsoever in the record of this case to support these statements.

**7.** *See, e.g.,* the Uniform Written Obligations Act which provides, in pertinent part:

> A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.

33 Pa.Stat. § 6 (Purdon).

However, the bank has not alleged that the debtor's defense of failure of consideration is barred by the terms of the aforesaid section and, consequently, we make no ruling as to whether the language in the subject note falls within the provisions set forth above.

**8.** *See* the testimony of the bank's managing general partner set forth on pages 10 and 11 of this opinion.

W. Thomas Tither, Jr., the author of the aforesaid letter and the bank's managing general partner, testified as follows:

Q  Do you have anything there that would indicate the manner in which a loan to Jane Brady was or was not disbursed?

A  Yes.  The loan ledger cards for Mrs. Brady show that the balance was transferred to her loan account from Anthony Brady's loan account.

The second line of Mrs. Brady's loan ledger card said "transferred from Anthony L. Brady."

Q  When you say "a transfer," there weren't any monies actually disbursed out of the bank, were there?

A  Well, when we made the loan to Anthony Brady, there certainly were.  This is merely the substitution of the debtor.  This is with the old debtor and the new debtor's consent.[9]

Q  Now, what consent do you have from Jane Brady to that particular use of the loan proceeds?

A  We had the execution and delivery of her note as an indication that she was to become liable for this amount.  Since we did not receive anything in writing from her prior to the disbursement of the loan, that was the reason that I sent her this letter [November 21, 1978], to confirm with her personally at the time it was made.

Q  Well, you say the reason you sent her the letter.  It was actually a letter addressed to Anthony Brady.

A  That's right.  That's the reason that I sent the copy of the letter addressed to Mr. Brady to Mrs. Brady.

Q  But apart from the note itself, and for whatever that might imply, do you have any document by which you autho-

rized specifically the bank to apply the proceeds of her note to Anthony Brady's account?

A  No, I have no written authorization from her for that.[10]

Both the debtor and her son testified that the note was executed so that the son could acquire funds to purchase the property and the son was able to get the necessary funds to buy the property.  However, it is clear from the record that the note was intended to benefit the son and not the uncle.  The extinguishment of the uncle's obligation to the bank was accomplished through the conduct of persons other than the debtor and said conduct occurred after the date on which the note was signed by the debtor.  Frankly, we are at a loss to understand how the bank could maintain that these unilateral and post-execution events form the basis of the debtor's agreement with the bank as embodied in the note.  Based on all the above, we find that the bank's reliance on section 3408 of the Pennsylvania Commercial Code to be wholly without merit.  Consequently, we conclude that the bank's application of the loan proceeds in question to the antecedent obligation owing to the bank by the uncle constituted a failure of consideration.  Therefore, we will disallow the bank's claim, which is predicated on the note in question.

■  Finally, the bank contends that the debtor is, in any event, estopped from alleging the defense of failure of consideration because she, on various occasions, made representations to the bank that she would repay the loan in question.  The bank maintains that the debtor has acted inequitably in now refusing to repay said loan and that such conduct on the part of the debtor has resulted in "severe prejudice" to the bank.  In view of our determination that the note in question was void *ab initio* for failure of consideration, we find no merit in the bank's position that it is the debtor who has acted inequitably.

---

9.  The debtor testified, to the contrary, that she did not consent to have loan proceeds of the note signed by her applied to the outstanding obligation of the uncle.  *See* notes of testimony, June 16, 1982, at 27.

10.  *See* notes of testimony, July 6, 1982, at 8.