In re Jane F. BRADY, formerly known as Mary Jane Brady, Jane Brady Gerhart, Debtor.

Jane F. BRADY, and James J. O'Connell, Standing Trustee, Appellees,

v.

**TOBIAS KNOBLAUCH PRIVATE BANK, Appellant.**

Bankruptcy No. 81–00638G.

Civ. A. No. 84–182.

United States District Court, E.D. Pennsylvania.

May 22, 1984.

David S. Foulke, Spring House, Pa., for appellees.

Alison Douglas Knox, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellant.

OPINION

LUONGO, Chief Judge.

This is an appeal from an order of bankruptcy judge Emil F. Goldhaber disallowing the claim of Tobias Knoblauch Private Bank against the Chapter 13 estate of debt-

or Jane F. Brady. After a three-day trial the bankruptcy judge found that a promissory note executed by the debtor in favor of the bank was not supported by consideration, and ruled the bank's claim unenforceable against Mrs. Brady's estate. 35 B.R. 551 (Bkrtcy.E.D.Pa.1983). The judge also ruled that the debtor was not precluded, because of earlier state court proceedings, from challenging the validity of the bank's claim. On appeal, the bank argues only that the debtor's promissory note was supported by consideration.

## Background

The record in this case reveals a series of loans advanced by the Tobias Knoblauch Private Bank to the debtor's son, Joseph L. Brady, Jr. and to other members of the Brady family. Specifically at issue is a transaction that resulted from Joseph Brady's attempt to secure financing for his purchase of a parcel of real estate known as the "Plymouth Meeting property." 35 B.R. at 552. The bank alleged at trial that Joseph Brady obtained $60,000.00 of the bank's funds by arranging for a loan upon which his uncle, Anthony Brady, would be liable. (A direct loan to Joseph Brady was not permissible because Brady's prior loans with the bank had nearly exhausted the bank's individual lending limit under state law.) The bank further introduced testimony tending to show that, prior to closing on the Plymouth Meeting property, Anthony Brady expressed a desire not to be held liable on loans relating to that tract.[1] The bank argued that Joseph Brady then secured his mother's consent to become a substitute debtor in place of Anthony Brady, and that subsequent to closing, the bank agreed to the substitution.

The debtor, however, unequivocally denied that she consented to use of the proceeds from her obligation to the bank to satisfy the existing obligations of her brother-in-law, Anthony Brady. The debtor, moreover, argued that this unauthorized use of her funds rendered unenforceable her $60,000.00 promissory note in favor

of the bank because of lack or failure of consideration.

The record in this case also reveals that, despite the magnitude of these transactions and the asserted connection between them, there was little direct communication between the interested parties, and even less information committed to writing. Surprisingly, the bank itself maintained only sparse documentation of its accounts and their relationship. In addition, the bank did not utilize standardized forms for loan applications; it relied on a "personal financial statement" filled out by loan applicants. N.T. 83, July 6, 1982. The debtor did complete such a statement. The statement was dated November 10, 1978, but it remains unclear when the bank received it. N.T. 10–11, July 6, 1982.

After consideration of the testimony adduced at trial and relevant exhibits, the bankruptcy judge reconstructed the following scenario:

On October 31, 1978, Jane F. Brady ("the debtor") signed a promissory note ("the note") in favor of the Tobias Knoblauch Private Bank ("the bank") in exchange, ostensibly, for $60,000.00. Despite having signed the note, it is undisputed that, at the time the note was executed, the debtor: (1) had had no prior relationship with the bank; (2) had not applied for the $60,000.00 loan; and (3) had not spoken with any officer or employee of the bank regarding the $60,000.00 loan. Rather, the debtor had signed said note in her home at the request of her son, Joseph L. Brady, Jr. ("the son"), who informed her that her signature was necessary as an accommodation to him because the bank's lending limit prevented a direct loan to him. The son needed the $60,000.00 to make settlement on a piece of property known as the "Plymouth Meeting property" ("the property").

Prior to the execution of the note, the bank had loaned $60,000.00 to Anthony Brady, the debtor's brother-in-law who was the son's uncle ("the uncle"). After

1. N.T. 58, July 6, 1982.

the note was signed by the debtor, the bank used the proceeds from that loan to pay off the pre-existing loans owed by the uncle to the bank. Although it is far from clear, it appears that the $60,000.00 originally disbursed to the uncle was somehow transferred into the son's personal checking account.[2] The son thereafter wrote a personal check to purchase the property. As a result of the bank's actions, the debtor, as reflected by the bank's record, became liable for $60,000.00 and the uncle's pre-existing liability for the said $60,000.00 was extinguished as a result thereof.[3]

The bank thereafter mailed bills for the interest due on the $60,000.00 loan to the debtor at her residence, but it was the son who actually made the payments due on the loan. However, in October of 1979, the note went into default and the bank confessed judgment on the note in December of 1979. Nevertheless, the debtor, on four separate occasions in 1980, made payments to the bank in partial repayment of the loan.

[2] The son testified that these funds did arrive in his checking account by the time the closing on the Plymouth Road property occurred. However, the son further testified that he did not know whether the funds were so transferred on account of the uncle's notes or the mother's note. *See* notes of testimony, July 6, 1982, at 58. [footnote by the bankruptcy judge].

[3] *See* the testimony of the bank's managing general partner set forth on pages 10 and 11 of this opinion. Moreover, the bank's proposed finding of fact number twenty-one provides:

21. The Bank credited Anthony Brady's loan account with $60,000, (citation omitted), marked two notes in the amounts of $50,000 and $10,000 "paid," returned the notes to Anthony Brady, *and notified plaintiff [debtor] of these transactions by sending her a copy of a letter to Anthony Brady* explaining the transactions and enclosing the cancelled notes (emphasis added).

*See* the bank's Supplemental Trial Brief at 5. [footnote by the bankruptcy judge].

Based on these findings of fact, the bankruptcy judge concluded that Mrs. Brady's promissory note in favor of the bank was not supported by consideration. The judge rejected the bank's claim that the debtor had signed the note in exchange for the bank's cancellation of Anthony Brady's

obligations, finding not a "shred of evidence" to support that contention. 35 B.R. at 554. In so ruling, the judge found without merit the bank's reliance on section 3408 of Pennsylvania's Commercial Code, 13 Pa.C.S.A. § 3408. Section 3408 obviates the need for consideration only with respect to "an instrument or obligation thereon *given in payment of or as security for an antecedent obligation of any kind*" (emphasis added). Because the judge found the debtor had not consented to use of her loan proceeds to satisfy Anthony Brady's antecedent obligation, he reasoned that section 3408 did not apply.

### The Contentions

On appeal, the bank's challenge to Judge Goldhaber's ruling on the consideration issue proceeds on a somewhat different theory than was initially addressed to the bankruptcy judge. In essence, the bank claims that its disbursement of $60,000.00 to Joseph Brady constituted consideration *both* for the notes signed by Anthony Brady *and* the note executed by Mrs. Brady.

In support of that claim, the bank advances the following arguments:

The bank argues that its loan to Anthony Brady was not a transaction unrelated to Mrs. Brady's loan, but that it was arranged by Joseph Brady in order to secure financing for his purchase of the Plymouth Meeting property. The bank contends that, prior to closing on the Plymouth Meeting tract, Anthony Brady expressed a desire not to be liable on notes relating to that property, and that Joseph Brady then sought and received his mother's consent that she would become liable for the amount needed to complete the purchase. The bank concludes, therefore, that Mrs. Brady became merely a substitute debtor on the loan for the Plymouth Meeting property, and that she received precisely the intended benefit of her bargain: that the bank would advance the funds needed by her son. The bank argues that this conclusion remains sound even though the funds disbursed to the debtor's son took a "dog-

leg route" through the transaction involving Anthony Brady,[2] and even though Joseph Brady may not have explained Anthony Brady's antecedent involvement to his mother.[3]

The debtor responds to the bank's arguments first by characterizing the appeal as a challenge to the bankruptcy judge's factual findings, which the debtor contends, the bank must show to be "clearly erroneous." Bankruptcy Rule 8013; *In re Morrissey*, 717 F.2d 100 (3d Cir.1983).

With respect to the merits of the bank's arguments, the debtor claims that the factual scenario advanced in this appeal is not supported by the record or the bankruptcy judge's findings. Moreover, the debtor argues that, assuming the bank's statement of facts had support, the bankruptcy judge's conclusion remains correct. Even according to the bank's view of the facts, debtor argues, the bank's reliance on Mrs. Brady's credit occurred well after the bank's disbursement of funds to her son. Thus, absent independent consideration, she argues, there was no consideration for her promissory note.

### Discussion

■ Before the bankruptcy judge, the bank argued primarily that the debtor's promissory note was enforceable because of the bank's cancellation of Anthony Brady's obligations. Judge Goldhaber, however, found, and I agree, that the record discloses no evidence of the debtor's consent to such use of the proceeds of her loan. The bankruptcy judge, therefore, correctly concluded that release of Anthony Brady's obligations was not consideration for the debtor's promissory note. Furthermore, the bankruptcy judge properly held section 3408 of Pennsylvania's Commercial Code inapplicable insofar as Jane Brady's note was sought to be characterized as payment of or security for Anthony

Brady's antecedent obligation. I will therefore affirm the bankruptcy judge's order as to that ground.

The bankruptcy judge, however, did not consider whether the bank's disbursement of funds to the debtor's son rendered the debtor's note enforceable. It is, indeed, questionable whether the bank placed that theory before the bankruptcy judge. Although the bank's "Proposed Findings of Fact" included in its supplemental trial brief to the bankruptcy judge appear consistent with the theory now advanced, the bank's legal argument in that document clearly rested on the premise that the debtor's note was enforceable because of the bank's cancellation of Anthony Brady's obligations. Supplementary Trial Brief of Defendant at 11. As the bankruptcy judge stated: "[T]he bank maintains that there was consideration given in exchange for the note, not on account of the fact that the son received funds, but because the debtor had intended to give the note in payment for the pre-existing obligation of the uncle." 35 B.R. at 554 (footnote omitted).[4]

■ The threshold question in this appeal, then, is whether the bank should be permitted to advance its new legal theory before this court. After consideration of the record, I conclude that the bank should be permitted to present its contention, but that it should be required to do so in the first instance on a remand to the bankruptcy judge.

I am persuaded that the bank should be permitted to advance its theory at this time for several reasons: The general issue of consideration was clearly before the bankruptcy judge, and the bank's recent submissions seek only to characterize a different aspect of the allegedly related transactions between members of the Brady family and the Knoblauch Bank as a legally sufficient exchange for Mrs. Brady's note.

Moreover, the facts upon which the bank relies to support its argument are within

---

2. Brief for Appellant at 11.

3. Brief for Appellant at 6.

4. The bank argues that the bankruptcy judge erred in its above-quoted interpretation of the

bank's position. I am not persuaded that the bankruptcy judge was in error, but I will nonetheless permit the bank a second opportunity to articulate its position to the bankruptcy judge.

the record presented to the bankruptcy judge. The courts generally will permit parties to put forth new legal issues or interpretations when the factual basis for those contentions is in the record before the bankruptcy judge, and I see no reason to deviate from that practice here. *In the Matter of Walsh Construction, Inc.*, 669 F.2d 1325 (9th Cir.1982); *In re Gilchrist Company*, 410 F.Supp. 1070 (E.D.Pa.1976). *See* 1 *Collier on Bankruptcy* ¶ 3.03(8)(a), (b) (15th ed. 1980).

My conclusion that the bankruptcy judge should first consider the merits of the bank's argument is based on the likelihood that it will be necessary to make additional findings of fact and, more importantly, to draw additional inferences from those facts currently in the record. For example, the dispute over the relationship between the loan to Anthony Brady and the transaction involving Jane Brady should be resolved initially by the bankruptcy judge. Likewise, the question whether the debtor actually received the intended benefit of her bargain should be considered in the first instance by the only fact finder having the opportunity to observe the demeanor of the interested witnesses. In short, the function of the district court in bankruptcy appeals is largely that of an appellate tribunal, and I hesitate to expand that role into fact finding in order to resolve legal issues not clearly presented to, and certainly not passed upon by the bankruptcy judge.

Finally, I have considered whether remanding this case would be inappropriate in view of the debtor's contention that, even if the facts were found in accord with the bank's scenario, the bankruptcy judge's conclusion remains sound. As noted above, the debtor's argument on this point is that the bank approved the loan to Mrs. Brady only *after* the disbursement of funds to her son, and that the bank could not therefore have relied on her credit. Apparently invoking the principle that "past considera-

tion is no consideration," the debtor argues that the bank's payment of $60,000.00 to her son cannot support her promissory note.

In my view, it would be improper to foreclose the bank from presenting its theory to the bankruptcy judge at this time. Although Mrs. Brady's loan was formally approved approximately two weeks after closing on the Plymouth Meeting property, I cannot say as a matter of law that the debtor's promissory note, which appears to have been executed before the closing, was not substantially contemporaneous with the bank's disbursement of funds. *See* 1A *Corbin on Contracts* § 213(A)(1) (1984 Supplement). The bankruptcy judge will likewise have to consider whether section 3408 of the Pennsylvania Commercial Code renders the debtor's note enforceable as payment for any antecedent obligations that might have been incurred by *Joseph Brady*.[5] In sum, the bank's arguments on appeal raise several issues which I cannot resolve without intruding on the bankruptcy judge's fact finding function, and I will therefore remand the case for further consideration.[6]

---

**5.** In this regard, the bankruptcy judge must, of course, consider the extent to which any obligations of Joseph Brady were unenforceable because of Pennsylvania's individual lending limit, and whether Mrs. Brady may assert such unenforceability as a defense under section 3408.

**6.** On remand, the bankruptcy judge is, of course, free to require additional testimony if he deems it necessary.