719 N.E.2d 143 (1999)
308 Ill. App.3d 33
241 Ill.Dec. 282
In the Matter of the APPLICATION OF the COUNTY TREASURER AND EX OFFICIO COUNTY COLLECTOR OF COOK COUNTY Illinois for Order of Judgment and Sale of Lands and Lots Upon Which all or a Part of the General Taxes for the 1990 Tax Year are Delinquent Pursuant to Applicable Sections of the Revenue Act of 1939, as Amended (Cambridge Investment Group, Petitioner-Appellant,
v.
First Chicago Bank of Ravenswood, National Boulevard Bank, Trust No. 8368, and Sacramento Crushing Corporation, Respondents-Appellees).
No. 1-96-1475.
Appellate Court of Illinois, First District, Second Division.
September 21, 1999.
*144 William R. Quinlan, Michael I. Rothstein, Michael W. Kier, Quinlan & Crisham, Ltd., Chicago, for Appellant.
Edward A. Berman, Edward A. Berman, P.C., Chicago, for Appellee.
Justice GORDON delivered the opinion of the Court:
This case comes before us on an appeal from a final judgment of the Circuit Court of Cook County holding a property tax sale pursuant to the Revenue Act of 1939 was a sale in error. The court sustained the protest of respondent First Chicago Bank of Ravenswood (Bank) to the petition of Cambridge Investment Group (Cambridge) for a tax deed, and voided the sale of delinquent property taxes to Cambridge on the basis that the sale violated a statutory requirement that sales occur in consecutive order by permanent real estate index number (PIN) (see 35 ILCS 205/243 (West 1992)).[1] The court ordered the county clerk to pay to the "party redeeming" a refund of certain moneys that the Bank had deposited with the clerk as a redemption (of tax deficiency) under protest. Cambridge appeals, arguing that the circuit court had no jurisdiction to invalidate the sale and that even if it had jurisdiction, its decision was erroneous. The Bank counters that the appeal is moot, and the court's decision was proper. For the reasons given below, we dismiss the appeal.

FACTS
In December 1993 Cambridge filed a petition for tax deed to a parcel of property after purchasing the unpaid taxes on the land at the 1992 annual Cook County tax sale. The Bank, which held a mortgage on the property (Sacramento was the beneficiary of a trust which actually owned the property), redeemed the property under protest, contending that the proper procedures were not followed at the tax sale at which Cambridge purchased the taxes on the property. The case was tried between September and November 1994. In February 1995 the court rendered a memorandum decision denying the protest of the Bank. However, in January 1996 the court reconsidered its prior memorandum and order, and in February 1996 the court entered an order granting the Bank's motion to vacate or modify the February 1995 *145 judgment and sustaining the Bank's protest. The following facts were adduced during the 1994 trial.
The case revolves around what occurred on March 20, 1992, during[2] the annual sale of delinquent taxes in Cook County. The parcels which are the subject of the instant appeal were assigned PINs XX-XX-XXX-XXX and -021. They were two of a group of seven, all of which it is undisputed were listed in the county records as being owned by an entity which was in bankruptcy. The entire group of seven was called at once, in PIN order,[3] on March 20. However, immediately after the auctioneer, Bob Lea, called the PIN for the last parcel of the group, he announced that the group was part of a bankruptcy estate, which the parties agree would prohibit the county from offering the taxes for sale.
Cambridge's agent, Howard Weitzman, was in attendance at the time that the auctioneer so stated, and he objected orally from the floor that the parcels were no longer part of a bankruptcy estate and could be sold. There was some variance in the testimony as to what occurred next. Weitzman and Lea both testified that Lea told Weitzman that because the parcels were in bankruptcy according to the county records, they could not be sold, and that Weitzman should talk to someone else. The auction then resumed with the next PIN, as Weitzman left the room. Other bidders at the sale (Christ Athans, Greg Berkowitz, and Steven Deely) corroborated this version of events at trial. None of these witnesses testified to any announcement from the podium to the effect that the parcels could be offered later in the day.
However, Ron Marshall, a tax sale supervisor with the Cook County Collector's office, testified that when Weitzman objected, Lea stopped the sale, and Marshall calmed Weitzman down from the auctioneer's podium, and told him from the podium in front of the other buyers that the parcels could not be offered then, that Weitzman would have to talk to the legal department, and that if he could get the situation clarified, the parcels could be offered "later." A third version of events came from Leo Keryczynsky, general counsel for the Cook County Collector's office, who testified that Marshall temporarily stopped the sale and came to ask Keryczynsky's advice as to what should be done regarding Weitzman's objection. Keryczynsky testified that he told the auctioneer to tell the buyers "that upon [Keryczynsky's] instructions, that parcel was not to be offered until [sufficient documentation] was provided to [Keryczynsky]."
At any rate, it is uncontradicted that after Weitzman objected during the auction he spoke first with Marshall, then with Keryczynsky. After speaking with the latter, Weitzman contacted an associate who obtained documents from the Bankruptcy Court and brought them to the County Building, where the auction was taking place. These documents were presented to Keryczynsky, who then authorized Marshall to authorize Lea to "reoffer" the parcels. Keryczynsky stated that "reoffer" was not necessarily an accurate term, because it implied that the parcel had already been offered for sale once.
Keryczynsky, Marshall, Lea, Weitzman, and Athans testified that the parcels were not mentioned again until after the last regular sale of the day, at which point the auctioneer announced that there would be reoffers. Two persons testified differently. Steven Deely, a bidder at the sale, testified that to the best of his recollection the parcels were not reoffered on March 20 at all. However, Deely admitted that he had no independent recollection of the March 20 sale, and his testimony was *146 based on a document he brought with him. He also admitted that he paid closest attention to the properties he intended to bid on, and he did not intend to bid on the properties in question. Berkowitz testified that the properties were offered during the regular sale day, at the end of a break.
It is uncontradicted (except for Deely's testimony that the reoffer did not occur) that when Lea announced that the parcels would be reoffered, several of the regular bidders were present. However, no witness testified that everyone who was present when the properties were first called was present when the "reoffer" announcement was made. Only Cambridge and State Title bid on any properties in the group. Cambridge entered the only bid on the two parcels which are involved in this litigation, while State Title entered the only bid on four other parcels in the group. Because Cambridge was the sole bidder on the two parcels it purchased, it obtained the parcels at the maximum statutory penalty interest of 18% per six months.[4] It paid the county clerk $580,416.30 to purchase the taxes, including back taxes, interest, and penalties.
As previously noted, Cambridge petitioned the circuit court for a tax deed in December 1993 to the parcels on which it had purchased the taxes, and the Bank redeemed the taxes under protest in February and March 1994 by depositing $819,356.37 with the county clerk. The parties stipulated at trial that the Bank had an interest in the subject property sufficient to allow it "to make an effective redemption on the property." The certificate of redemption under protest which the Bank filed alleged that
"[t]he tax sale to [Cambridge], purportedly held on March 20, 1992 was actaully [sic] held on or about March 30, 1992 and such sale was not made at public sale and in consecutive order as required by Section 243 of the Revenue Code [sic] of 1939. Alternatively, if such sale was conducted in [sic] March 20, 1992 payment for the purchase was not made forthwith by [Cambridge] nor was application made to the County Clerk within 10 days after the sale for statement of general taxes due and unpaid not included in the advertisement for sale, as required by Section 247 of the Revenue Code [sic] of 1939. The tax sale from which this redemption is made is void and of no effect."
In February 1995 the circuit court denied the Bank's protest on the grounds that the Bank lacked standing to protest. However, in February 1996 the court reversed itself and sustained the protest. The court held that the statute required that parcels be offered in consecutive order, that the parcels Cambridge had purchased were not offered in consecutive order, and that this rendered the sale a "sale-in-error." The court also held that the auction at which Cambridge had made its purchase constituted a "private sale," and was a sale in error for that reason as well. The court stated in its order that "[a]s authorized in Section 21-380 of the Property Tax Code, the Court finds the sales for 1990 taxes of these properties * * * to be sales in error under Section 22-45 of the Property Tax Code." The court accordingly ordered that the statutory penalty interest be returned to the "party redeeming."
On February 20, shortly after the court entered its order sustaining the Bank's protest, Sacramento Real Estate Corporation (Real Estate) filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Northern District of Illinois. In re Sacramento Real Estate Corporation, No. 96-B-3992. On February 22, 1996, respondent Sacramento Crushing Corporation (Sacramento) and Sacramento Corporation *147 (Sacramento Corp.), the parent company to Real Estate and Sacramento, followed suit, and filed their own separate Chapter 11 bankruptcy petitions. In re Sacramento Crushing Corporation, No. 96-B-4120; In re Sacramento Corporation, No. 96-B-4121. The three bankruptcy proceedings were consolidated in the bankruptcy court in May 1996. In October 1996 (while this appeal was pending), in an adversarial action between the Bank and the debtors (case No. 96-A-394) within the bankruptcy action, the bankruptcy court held that the amount refunded by the circuit court to the "party redeeming" did not belong to the Bank, but was rather the property of the debtors' bankruptcy estate. The consolidated case was dismissed in December 1996, and closed in May 1998.
On February 26, 1996, subsequent to the bankruptcy filings by the Sacramento entities, but within 30 days after the circuit court entered its February 1996 order sustaining the redemption under protest and before the bankruptcy court's October 1996 determination that the money refunded by the circuit court was the property of the debtors' estate, Cambridge filed a motion for reconsideration of the court's January 1996 memorandum and February 1996 order. The court denied Cambridge's motion for reconsideration in April 1996. Later in April 1996 Cambridge filed this appeal.
In its appeal Cambridge argues that the circuit court exceeded its jurisdiction because: (1) it was powerless to void the sale on grounds other than those the Bank raised in its protest; (2) the Bank lacked standing to assert a protest under sections 260 and 266 of the Revenue Act (35 ILCS 205/260, 266 (West 1992)); and (3) the court cited an inapplicable section of the statute in finding the sales to be sales in error. Cambridge also contends that the circuit court's findings that the parcels were not offered in consecutive order and that the sale occurred in "private" were against the manifest weight of the evidence. The Bank argues that the appeal should be dismissed as moot, or, in the alternative, that we should affirm the circuit court. For the reasons given below, we dismiss the appeal for lack of jurisdiction, noting that were we not to dismiss the appeal, we would affirm the result reached by the circuit court.[5]

ANALYSIS

I. JURISDICTIONAL IMPLICATIONS OF THE BANKRUPTCY STAY
As a reviewing court, we must be certain of our jurisdiction prior to proceeding in a cause of action. R.W. Dunteman Co. v. C/G Enterprises, Inc., 181 Ill.2d 153, 159, 229 Ill.Dec. 533, 692 N.E.2d 306, 310 (1998). We are obliged to dismiss an appeal if we lack jurisdiction, even if no party to the appeal has raised the issue. Shanklin v. Hutzler, 277 Ill.App.3d 94, 99, 213 Ill.Dec. 846, 660 N.E.2d 103, 106 (1995); Fligelman v. City of Chicago, 264 Ill. App.3d 1035, 1037, 202 Ill.Dec. 459, 637 N.E.2d 1195, 1196 (1994). In this case we begin with the uncontrovertible rule that a reviewing court has no jurisdiction over an appeal absent a properly filed notice of appeal. Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd., 182 Ill.2d 6, 7, 230 Ill.Dec. 593, 694 N.E.2d 562, 563 (1998) ("filing a notice of appeal is the jurisdictional step which initiates appellate review"); *148 Dunteman, 181 Ill.2d at 159, 229 Ill.Dec. 533, 692 N.E.2d at 310 ("[t]he timely filing of a notice of appeal is both jurisdictional and mandatory"); Childers v. Kruse, 297 Ill.App.3d 70, 73, 231 Ill.Dec. 682, 696 N.E.2d 1253, 1255 (1998) ("[a] timely notice of appeal is both jurisdictional and mandatory").
In this case the February 13 order disposed of all issues relating to the redemption under protest, and also stated that it was a final and appealable order. It was to all appearances an order from which an appeal could be taken, once any post-trial motions had been disposed of. The impediment to our jurisdiction lies in the fact that Cambridge's motion to reconsider and notice of appeal were filed during the Sacramento entities' bankruptcy proceeding.
Section 362 of the Bankruptcy Code stays "all entities," immediately upon the filing of the bankruptcy petition, from
"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
* * *
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate[.]" 11 U.S.C. § 362(a)(1), (a)(3), (a)(4) (1994).
There is no dispute that the motion to reconsider and the notice of appeal were filed during the pendency of the stay. The stay takes effect immediately upon the filing of the debtor's petition in bankruptcy, regardless of whether the other parties to a stayed proceeding are aware that the petition has been filed. 11 U.S.C. § 362(a) (1994); Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d Cir.1995); Cohen v. Salata, 303 Ill.App.3d 1060, 1064, 237 Ill.Dec. 413, 709 N.E.2d 668, 671 (1999); 3 Collier on Bankruptcy § 362.11 at 362-115 (15th ed. rev.1998) (hereinafter Collier). Unless a party requests relief from the stay from the bankruptcy court, the stay lasts (1) with respect to acts against property of the estate, until the property is no longer property of the estate, or (2) with respect to any other act, until the earliest of (a) the case being closed, (b) the case being dismissed, or (c) a discharge being granted or denied. 11 U.S.C. § 362(c) (1994). The bankruptcy case was not dismissed until long after Cambridge's filings, and the propertythe nature of which we will discuss more fully belowwas still property of the estate at the time of the filings.
There remains the question whether the filings in fact violated the stay. A subsidiary question is, even if the filings were in violation of the stay with respect to the debtor, were they also void with respect to other parties in the casein this case, the Bank. We must answer both of these questions in the affirmative.
It is not entirely clear under which subsection of section 362 of the Bankruptcy Code Cambridge's filings were stayed. The most likely candidate would appear to be section 362(a)(1), which as noted stays inter alia the "continuation * * * of a judicial * * * proceeding against the debtor that was * * * commenced before the commencement of the [bankruptcy] case[.]" 11 U.S.C. § 362(a)(1) (1994). However, the underlying proceeding is a petition for tax deed, and it is not clear whether such an action is an action "against the debtor." It has been held that such a proceeding is an in rem action brought against the property the taxes on which have been sold. See Smith v. D.R.G., Inc., 63 Ill.2d 31, 35, 344 N.E.2d 468, 470 (1976) (tax sales are actions in rem, rather than in personam); In re Application of County Treasurer, 276 Ill. *149 App.3d 1084, 213 Ill.Dec. 541, 659 N.E.2d 457, 459 (1995) (same); Wilder v. Finnegan, 267 Ill.App.3d 422, 425, 204 Ill.Dec. 795, 642 N.E.2d 496, 499 (1994) (same); cf. In re Shamblin, 890 F.2d 123, 125 (9th Cir.1989) (Illinois tax sale held to violate automatic stay imposed by section 362(a)(4) of the Bankruptcy Code (staying acts to create, perfect or enforce a lien against property of the bankruptcy estate), without even mentioning section 362(a)(1)). However, this is not determinative that subsection (a)(1) is inapplicable. See In re Molitor, 183 B.R. 547, 553-54 (Bankr. E.D.Ark.1995) (holding that an in rem probate proceeding was stayed because the trustee (in the debtor's stead) "was required to take defensive action to protect the interest of the bankruptcy estate"). Further, an argument could be made that once there has been a redemption under protest, the character of the action changes, and becomes much more in the nature of an adversarial proceeding, with the tax purchaser attempting to obtain the statutory penalty interest and the delinquent taxpayer attempting to ward off the purchaser and recover some of the funds it has deposited with the Clerk. See 35 ILCS 205/253(f) (West 1992).[6]
At any rate, we need not conclusively answer the question whether Cambridge's motion to reconsider and its appeal were stayed under subsection (a)(1), because they would seem definitely to have been stayed under subsection (a)(3), as acts "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[7] Section 541 of the Bankruptcy Code notes that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1994). Such property is part of the estate "wherever located and by whomever held[.]" 11 U.S.C. § 541(a) (1994).
There are three "properties" which Cambridge's filings could be considered "acts" to obtain or control: (1) the real property on which Cambridge was initially attempting to obtain the tax deed; (2) the statutory penalty interest; and (3) Sacramento's cause of action for the statutory penalty interest. An argument could be made that Cambridge's filings were not acts to obtain the real property, because as noted above, the character of the petition for tax deed changes once a redemption under protest has been filed. Once property has been redeemedeven under protesta purchaser at a tax sale cannot obtain a tax deed. See 35 ILCS 205/253(f) (West 1992). Thus it is an unlikely result to conclude that Cambridge's filings constituted acts to obtain or control this property.
However, in order to redeem the property a redeemer must deposit with the County Clerk an additional amount ("statutory penalty interest") over and above the back taxes owed. 35 ILCS 205/253(c)(2) (West 1992). In this case the statutory penalty interest was substantialin excess of $300,000as it had accrued at a rate of 18% (of the over $500,000 Cambridge had *150 paid at the tax sale) per six months. See 35 ILCS 205/253(c)(2) (West 1992). If the circuit court had not sustained the protest in this case, Cambridge would have been entitled to the statutory penalty interest in addition to the amount it paid for the property (plus expenses and attorney fees). 35 ILCS 205/253(f) (West 1992). Cambridge's motion to reconsider and notice of appeal were clearly attempts to obtain this property.
The bankruptcy court expressly determined that this property constituted property of the debtor's estate. Cambridge might contend that it should not be bound by this determination, as it (Cambridge) was not a party to the bankruptcy case (in fact, its petition to intervene was denied by the bankruptcy court without prejudice). We note, however, that there is authority that the determination of a bankruptcy court regarding the effect of a stay trumps a determination made by a nonbankruptcy court. See Raymark Industries, Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir.1992), in which the Third Circuit Court of Appeals directed the bankruptcy court to enter an order voiding orders of the California appellate and supreme courts on the basis that the orders of those courts were void as violative of the automatic stay, notwithstanding that the California courts had determined that their actions did not violate the stay. See also In re Molitor, 183 B.R. 547, 553 (Bankr.E.D.Ark.1995), holding that probate proceedings which took place during an automatic stay were in violation of the automatic stay, notwithstanding that the probate court had decided to proceed over the objection of the bankruptcy trustee.
Moreover, in any event, we need not conclusively determine that the statutory penalty interest itself constituted property of the estate, because it is clear that Sacramento's cause of action against the Bank for the statutory penalty interest was property of the estate. It is beyond contravention that a debtor's cause of action constitutes property of the estate. United States v. Whiting Pools, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313, n. 9, 76 L.Ed.2d 515, 522 n. 9 (1983), quoting H.R.Rep. No. 95-595, p. 367 (1977) and S.Rep. No. 95-989, p. 82 (1978); In re M&L Business Machines, Inc., 136 B.R. 271, 275 (Bankr.D.Colo.1992); Matter of U.S. Marketing Concepts, Inc., 113 B.R. 487, 490 (Bankr.N.D.Ind.1990); In re Moore, 110 B.R. 924, 926 (Bankr.C.D.Cal. 1990); Collier, § 541.08 at 541-41. In this case even if we consider that at the outset of the bankruptcy case it was not conclusively determined as between the debtor and the Bank who was entitled to the statutory penalty interest, it is clear at least that Sacramento had a cause of action to attempt to obtain that property, and it is equally clear that Cambridge's filings in the state court caseits motion to reconsider and its notice of appeal would potentially have destroyed this property.
Accordingly, both Cambridge's motion to reconsider and its appeal violated the automatic stay imposed by section 362(a)(3) of the Bankruptcy Code as attempts to obtain or control "property of the estate." Because the filings violated subsection (a)(3), they were also invalid with respect to the Bank. Subsection (a)(3) stays acts against third parties which might affect property of the estate as well as acts taken with respect to the debtor. Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1035 n. 1 (3d Cir.1991) (because subsection (a)(3) applies regardless of whether the property is in the possession of the debtor, it applies to actions against third parties as well as those against the debtor). See also 11 U.S.C. § 541(a) (1994) (property which meets the definitions of "property of the estate" is part of the estate "wherever located and by whomever held"); In re Molitor, 183 B.R. at 553 ("[t]he property does not have to be in the possession of the debtor for the stay to apply").
Because Cambridge's motion to reconsider and its notice of appeal were *151 filed in violation of the stay, they were void.[8]In re Capgro Leasing Associates, 169 B.R. 305, 313-14 (Bankr.E.D.N.Y. 1994) (once stay has taken effect even the debtor may not file an appeal, and any attempt to do so is "a null and void actas if it never happened"); J. McCafferty, The Effect of Bankruptcy on the Debtor's Pending Litigation, 93 Comm. L.J. 214, 237 (1988) (stating that any appeal by the non-debtor would be stayed under section 362(a)(1)). See also Constitution Bank, 68 F.3d at 692, quoting Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1207 (3d Cir.1991) (once the stay is in effect, "`the parties themselves [can-]not validly undertake any judicial action material to the * * * claim against' the debtor * * * including] the filing of motions, which are void ab initio, unless the bankruptcy court later grants retroactive relief"); Easley v. Pettibone Michigan Corp., 990 F.2d 905 (6th Cir.1993) (complaint filed in state court during pendency of bankruptcy action violated automatic stay and did not toll statute of limitations); In re Carolina Steel Corp., 179 B.R. 413, 417 n. 6 (Bankr.S.D.N.Y.1995) (refiling of complaint in state court without prior leave from bankruptcy court was void ab initio); In re Confidential Investigative Consultants, Inc., 178 B.R. 739, 750 (Bankr. N.D.Ill.1995) ("[o]rdinarily, under 11 U.S.C. § 362, a suit filed during pendency of the automatic stay, even if in ignorance of the stay, is void and does not toll limitations"); Cohen, 303 Ill.App.3d at 1065-66, 237 Ill.Dec. 413, 709 N.E.2d at 672 ("actions taken in violation of the automatic stay provisions of section 362 are void"); Howard v. Howard, 670 S.W.2d 737, 739 (Tex.App.1984) ("[s]ince the automatic stay precluded further action in the State district court, appellant could not have filed her motion for new trial until the stay was lifted or modified by the bankruptcy court").
Since the notice of appeal filed by Cambridge violated the bankruptcy stay, it was void ab initio and of no effect. In re Soares, 107 F.3d 969, 976 (1st Cir.1997); 3 Collier § 263.11[1], at XXX-XXX-XXX-XXX. Absent a valid notice of appeal, we are without jurisdiction, and must dismiss the appeal. Niccum, 182 Ill.2d at 7, 230 Ill. Dec. 593, 694 N.E.2d at 563 (a properly filed notice of appeal is required for jurisdiction to attach).
Even if Cambridge's motion to reconsider and its notice of appeal could somehow be construed as non-violative of the stay, the circuit court's ruling on the motion to reconsider would have violated the stay. See In re Soares, 107 F.3d at 973-75 (court may take none but "ministerial" action with respect to a pending case involving a debtor); In re Lyngholm, 24 F.3d 89, 91 (10th Cir.1994), quoting Ellis v. Consolidated Diesel Electric Corp., 894 F.2d 371 (10th Cir.1990) ("`absent the bankruptcy court's lift of the stay, * * * a case such as the one before us must, as a *152 general rule, simply languish on the court's docket until final disposition of the bankruptcy proceeding'"); In re Everett, 178 B.R. 132, 141 (Bankr.N.D.Ohio 1994) (state court's ruling on motion to vacate violated automatic stay even though court ruled in favor of debtor and debtor filed motion in state court before it filed for bankruptcy); In re Brady, 35 B.R. 551, 553 (Bankr. E.D.Pa.1983) (state court post-petition dismissal of debtor's pre-petition motion to vacate state court judgment violated stay); 3 Collier § 362.03[3] at 362-16 ("if the nonbankruptcy court continues the action or enters a judgment notwithstanding the imposition of the automatic stay, the action or judgment should be considered ineffective against the debtor"). Since the circuit court's denial of Cambridge's motion to reconsider would have been void, the motion would still have been pending at the time the notice of appeal was filed. Accordingly, the notice of appeal would have been of no effect. See 155 Ill.2d R. 303(a)(2) ("a notice of appeal filed before the entry of the order disposing of the last pending post-judgment motion shall have no effect"). The fact that the court ruled against Cambridge on its motion to reconsider is irrelevant to the question whether the ruling violated the automatic stay. See Ellis, 894 F.2d at 373 ("[t]he operation of the stay should not depend on whether the [trial] court finds for or against the debtor") (emphasis in original); Everett, 178 B.R. at 141.
We recognize that appeals have been allowed to proceed with respect to codefendants of a debtor even when the automatic stay applies with respect to the debtor. See, e.g., Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir.1997); Pitts v. Unarco Industries, Inc., 698 F.2d 313, 314-15 (7th Cir. 1983). However, these cases are distinguishable. First, Mason and Unarco were concerned solely with the question of whether appeals against solvent codefendants were stayed under section 362(a)(1). Mason, 115 F.3d at 1450; Unarco, 698 F.2d at 314. In this case, on the other hand, both the motion to reconsider and the notice of appeal were stayed under section 362(a)(3) as acts to obtain or control property of the estate. Accordingly, those actions were without effect even with respect to the Bank. Borman, 946 F.2d at 1035 n. 1; 11 U.S.C. § 541(a) (1994); In re Molitor, 183 B.R. at 553. Also, in Mason the notice of appeal had already been filed before the debtor filed for bankruptcy. See Mason, 115 F.3d at 1449. (It is unclear whether the same is true in Unarco, a per curiam opinion.) In this case, however, Cambridge did not fulfill the jurisdictional requirement of filing its notice of appeal. The notice it filed was void ab initio. See 3 Collier, § 362.11[1] and n. 1, at 362-115362-116. Accordingly, there was no appeal to allow to proceed.
We note that the automatic stay did not preclude Cambridge's right to file post-judgment motions and to appeal. Section 108(c) of the Bankruptcy Code provides in pertinent part that if "applicable nonbankruptcy law" fixes a period for commencing or continuing a civil action in a nonbankruptcy court, and that period has not expired before the date on which the bankruptcy petition was filed, the period
"does not expire until the later of
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay * * * with respect to such claim." 11 U.S.C. § 108(c) (1994).
In this case, the Illinois Code of Civil Procedure allowed Cambridge 30 days from the time the circuit court entered its order to file a post-judgment motion directed against the judgment (735 ILCS 5/2-1203 (West 1994)) and the Illinois Supreme Court Rules allowed Cambridge 30 days to file an appeal from the judgment (155 Ill.2d R. 303(a)). Because Sacramento filed for bankruptcy less than 30 days after the circuit court entered its order *153 holding the sale to have been a sale in error, neither period had at that point expired. Accordingly, Cambridge had 30 days to file either a post-judgment motion or a notice of appeal after receiving notice that Sacramento's bankruptcy had been dismissed. 11 U.S.C. § 108(c)(2) (1994). See also Howard, 670 S.W.2d at 738-39 (motion for new trial was timely filed, although filed almost 6 months after final judgment, because it was filed within 30 days after stay was modified in bankruptcy proceeding and the opposing party had filed for bankruptcy only four days after entry of final judgment).
However, if Cambridge had filed a post-judgment motion after dismissal of the bankruptcy action, the notice of appeal it filed in April 1996 would have been invalid under our Supreme Court rules, because as previously noted a notice of appeal filed before resolution of the last pending post-judgment motion is of no effect, even if the motion is filed after the notice of appeal. See 155 Ill.2d R. 303(a)(2). Accordingly, Cambridge would have had to refile its notice of appeal after disposition of its refiled motion to reconsider, which it did not do. Thus, the appeal must be dismissed for lack of jurisdiction.
On petition for rehearing, Cambridge has contended, inter alia, that this Court should be barred from declining jurisdiction over the case because before so disposing of the case we denied a motion to dismiss the appeal on similar grounds. Cambridge contends that our earlier denial of the motion constitutes the "law of the case," from which we should not deviate. We must reject this argument. While it would unquestionably have been preferable to have determined the lack of jurisdiction when the matter was initially raised by motion, it is well-established that the denial of a motion to dismiss an appeal is not final; the question of our jurisdiction to hear a case may and indeed must be revisited before final disposition of the appeal. Hwang v. Tyler, 253 Ill.App.3d 43, 45, 192 Ill.Dec. 283, 625 N.E.2d 243, 245 (1993); Phil Dressler & Associates, Inc. v. Old Oak Brook Investment Corp., 192 Ill.App.3d 577, 580, 548 N.E.2d 1343, 1345, 139 Ill.Dec. 629 (1989); Carter v. Chicago & Illinois Midland Railway Co., 144 Ill.App.3d 437, 439, 98 Ill.Dec. 770, 494 N.E.2d 892, 894 (1986), rev'd on other grounds, 119 Ill.2d 296, 116 Ill.Dec. 210, 518 N.E.2d 1031 (1988); Mount Vernon Girl Scout Council v. Girl Scouts of U.S. of America, 55 Ill.App.2d 443, 448, 205 N.E.2d 474, 477 (1965). See also generally Dunteman, 181 Ill.2d at 159, 229 Ill.Dec. 533, 692 N.E.2d at 310 (as a reviewing court we must be certain of our jurisdiction before proceeding in a cause of action); Hess v. I.R.E. Real Estate Income Fund, Ltd., 255 Ill.App.3d 790, 798, 195 Ill.Dec. 935, 629 N.E.2d 520, 525 (1993) ("[t]he denial of a motion to dismiss made in the reviewing court does not bind the court. Such rulings are not unassailable, but rather are open to reconsideration"); Smith v. Intergovernmental Solid Waste Disposal Ass'n, 239 Ill.App.3d 123, 133, 178 Ill.Dec. 860, 605 N.E.2d 654, 660 (1992) (same). We are not bound by our previous ruling on the motion to dismiss, and we conclude that we do, in fact, lack jurisdiction to decide the appeal.
Moreover, even if we were to decide this case on the merits, the result as far as Cambridge is concerned would be the same because, as we shall explain below, we would affirm the circuit court if we were to reach the merits of the appeal.[9]
[Nonpublishable material removed under Supreme Court Rule 23]

CONCLUSION
For the reasons above stated, we dismiss the appeal for want of jurisdiction, *154 noting that if we were to reach the merits we would affirm the order of the circuit court denying the petition of Cambridge Investment Group for a tax deed and declaring its purchase at the 1990 sale of the taxes on the two parcels which are the subject of the instant litigation a sale in error.
Appeal dismissed.
CAHILL and McBRIDE,[*] JJ., concur.
NOTES
[1] In its ruling the circuit court referred to the Property Tax Code (Code), 35 ILCS 200/1-1 et seq. (West 1994). However, the law in effect at the time of the tax sale proceedings which the circuit court was reviewing was the Revenue Act of 1939 (Revenue Act), 35 ILCS 205/1 et seq. (West 1992). The Code replaced the Revenue Act effective January 1, 1994 (P.A. 88-455, arts. 21, 32, eff. January 1, 1994), but the sale in question occurred in 1992. Accordingly, we will refer to the Revenue Act in our disposition. Except in one instance, which we will discuss in the text, the provisions of the Code upon which the court based its ruling are in all relevant respects identical to the corresponding provisions of the Revenue Act, so neither party was prejudiced by this minor error.
[2] Because the taxes on hundreds or even thousands of parcels of land are auctioned off each year, the annual sales extend over a period of several days.
[3] This means both that the PINs in the group were called in order and that the group as a whole was called in PIN order with respect to the other parcels called during the day.
[4] As we shall explain in greater detail in our analysis, "statutory penalty interest" is an amount of money that a purchaser at a tax sale is usually entitled to receive from the owner of the property if the owner prevents the purchaser from obtaining a tax deed by redeeming the property.
[5] Because of the page limitations imposed under revised Supreme Court Rule 23 (166 Ill.2d R. 23), we are compelled to delete from the published portion of this opinion our explanation of why Cambridge's appeal would lack merit if we had jurisdiction over it. In brief, for the benefit of the reader of the published opinion, we conclude that the circuit court had jurisdiction to consider all criticisms raised by the Bank in its certificate of redemption under protest, that the certificate did raise the grounds upon which the court decided the case, and that the court properly held that the sale should be voided because the sale was not in PIN order and was "private." Our discussion of these issues is included in the unpublished portion of this decision, and a full, unabridged text of this decision is on file with the clerk of this court under Docket No. 96-1475.
[6] An exhaustive discussion of the provisions of the Revenue Act of 1939 (35 ILCS 205/1 et seq. (West 1992)) which control tax sales and redemptions is not necessary for purposes of understanding our jurisdictional analysis. We shall set out a more comprehensive overview of the relevant provisions before discussing why we would reject Cambridge's appeal on the merits if we had jurisdiction to reach the merits.
[7] The subsections of section 362(a) are not mutually exclusive, i.e., an act may potentially be subject to stay for more than one reason. (E.g. an action to obtain property of the estate (362(a)(3)) in a proceeding against the debtor (362(a)(1))). Cf. Raymark Industries, Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir.1992) ("the automatic stay of section 362 applies to all actions brought against a debtor * * * regardless of whether the assets in question are considered property of the debtor's estate"); In re Molitor, 183 B.R. at 553 ("[t]he probate proceeding, insofar as it concerned the Debtor or any property the Debtor might be entitled to, became subject to the automatic stay the moment the bankruptcy petition was filed").
[8] There is some variance among the federal circuits as to whether actions taken in violation of the automatic stay are "void" or "voidable." 3 Collier § 263.11[1], at XXX-XXX-XXX-XXX. See also In re Soares, 107 F.3d 969, 976 (1st Cir.1997) (void), and Easley v. Pettibone Michigan Corp., 990 F.2d 905, 909-11 (6th Cir.1993) ("invalid and voidable and shall be voided absent limited equitable circumstances"), and authorities cited therein. The Seventh Circuit Court of Appeals has yet to decide the issue. See In re Confidential Investigative Consultants, Inc., 178 B.R. 739, 750 n. 10 (Bankr.N.D.Ill.1995). However, the majority and the "better" view is that the actions are void. 3 Collier § 263.11[1], at XXX-XXX-XXX-XXX.

The reason some courts label such actions "voidable" appears to be in order to justify the bankruptcy court's power to validate actions taken in violation of the stay by modifying the stay retroactively. 3 Collier § 263.11[1], at XXX-XX-XXX-XXX; Easley, 990 F.2d at 909-11. However, we note that this power of the bankruptcy court is of no use to Cambridge in this case, as Sacramento's bankruptcy action has been dismissed and closed. Once a bankruptcy case has been terminated, the bankruptcy court is without jurisdiction to retroactively modify the stay. See Pettibone Corp. v. Easley, 935 F.2d 120 (7th Cir.1991) (bankruptcy court lacked jurisdiction to modify stay once it had confirmed plan of reorganization).
[9] Due to the page limitations imposed under revised Supreme Court Rule 23 (166 Ill.2d R. 23), our discussion of the merits of this appeal is omitted from the published portion of this opinion. That discussion is included in the full, unabridged text of this opinion which is on file with the clerk of this court under Docket No. 96-1475.
[*] Justice Leavitt originally sat on the panel in this appeal. Upon Justice Leavitt's retirement, Justice McBride substituted in the decision of this appeal. She has read the briefs and listened to the tape of oral argument.