2020 IL App (1st) 182723-U

FOURTH DIVISION
June 11, 2020

No. 1-18-2723

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DANIEL MCDUFFIE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v | ) | No. 16 L 11453, *cons.* |
| | ) | No. 16 L 11658, *cons.* |
| | ) | No. 17 L 11661. |
| | ) | |
| JOSEPH THOMAS, | ) | Honorable |
| | ) | Diane Shelley, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*: Where the trial court erroneously found it lacked jurisdiction to consider plaintiff's postjudgment motion to reconsider, we must vacate and remand for the trial court to address the postjudgment motion on its merits.

¶ 2     Plaintiff Daniel McDuffie appeals the circuit court's order vacating the default judgment order entered against defendant Joseph Thomas, the court's imposition of sanctions against McDuffie and his attorney under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), and the

court's disqualification of McDuffie's attorney from representing him. For the following reasons, we vacate and remand.

¶ 3                                    I. BACKGROUND

¶ 4        This case arises out of a foreclosure action against a single-family residence owned by Thomas located at 9615 South Bell Avenue in Chicago, Illinois. Thomas and McDuffie entered into a written lease agreement with an option to purchase contract on June 7, 2012, which required McDuffie to pay rent in the amount of $3,500 per month. The purchase price under the option contract was $490,000 and terminated on June 6, 2014.

¶ 5         Thomas obtained a mortgage on the property in the amount of $417,000 on August 14, 2009, from JP Morgan Chase Bank (Chase Bank). On August 9, 2012, Chase filed a foreclosure action against Thomas for nonpayment (Case No. 12 CH 30435). Initially, attorney David Kadzai filed an appearance for Thomas. Kadzai later moved to withdraw as counsel in April 2014, which the trial court allowed. Additionally, in July 2014, Chase Bank filed a motion to substitute Federal National Mortgage Association (Fannie Mae), which had taken over the mortgage, as the plaintiff. Chase Bank also filed a motion for summary judgment against Thomas and a motion for a judgment of foreclosure.

¶ 6         McDuffie, *pro se*, commenced a separate action against Thomas for breach of contract, foreclosure, and fraud on September 18, 2013 (Case No. 13 CH 21415). He later filed an amended complaint which alleged actions of *quantum meruit*, breach of contract, common law fraud, and violations of the Municipal Code of the City of Chicago (municipal code). McDuffie alleged that Thomas verbally solicited McDuffie to perform $163,000 worth of renovations and repairs to the property. McDuffie alleged that Thomas breached the parties' lease agreement with

option to purchase contract and committed fraud by concealing material defects of the property. He asserted that the material defects violated the municipal code.

¶ 7        McDuffie, through counsel, also commenced another action against Thomas on May 14, 2014, for specific performance, failure to disclose certain defects, injunctive relief, and breach of contract (Case No. 14 CH 08257). McDuffie alleged that Thomas breached the lease and option to purchase contract by failing to pay his mortgage, resulting in foreclosure. He alleged that Thomas denied knowledge of various defects in the property in the disclosure report attached to the lease agreement, but McDuffie later had the home inspected and discovered asbestos, lead paint, and mold, along with other repairs that were required in the amount of $11,950. McDuffie alleged that he made $113,780.08 worth of repairs to the property in reliance of Thomas's assurance that he would correct the default of the mortgage and the option to purchase contract would be consummated. Both of McDuffie's cases were filed in the Chancery Division and later transferred to the Law Division. Upon motion by Thomas in 2014, they were consolidated.

¶ 8        Additionally, Thomas initiated a forcible detainer action against McDuffie in December 2013 for failure to pay rent (Case No. 13 M1 728715), and McDuffie filed a counterclaim for breach of contract. The court in the use and occupancy case entered an order on March 19, 2014, requiring McDuffie to pay $3,500 per month during pendency of the proceedings. Over time, Thomas filed several petitions for rule to show cause regarding McDuffie's failure to pay the court-ordered use and occupancy amounts. The forcible detainer case was later transferred to the Law Division and consolidated with Case Nos. 13 CH 21415 and 14 CH 08257. McDuffie moved to reduce use and occupancy based on breach of an implied warranty of habitability and also filed several emergency motions to compel Thomas to make repairs, which were denied.

¶ 9        The consolidation of Case Nos. 13 CH 21415 and 14 CH 08257 was subsequently vacated based on a motion by McDuffie. Both cases were transferred to Calendar W.

¶ 10       Thomas filed a response to Fannie Mae's motion for summary judgment in the foreclosure case. He also filed an answer, affirmative defense, and counterclaims to McDuffie's first amended complaint in Case No. 13 CH 21415. Thomas asserted that McDuffie damaged the property by attempting to convert it from a single-family home to a two-flat without permission. Thomas also filed an answer in Case No. 14 CH 08257 in which Thomas denied that McDuffie paid rent as required by the lease agreement or that Thomas made reassurances to McDuffie that he would bring the mortgage current.

¶ 11       On February 24, 2015, the court in the mortgage foreclosure case, Judge Anna Loftus, entered an order granting Fannie Mae's motion for summary judgment against Thomas, entering a judgment of foreclosure, and appointing a selling officer. Judge Loftus determined that the total amount due was $ $499,034.77. After several attempts, McDuffie was permitted to intervene in the foreclosure case based on the lease agreement. In the judgment of foreclosure, Judge Loftus held that, "The court further finds that the following defendants have good and subsisting liens against the property, in the order of priority noted below, all of which are inferior to the lien of plaintiff: **Daniel McDuffie, as Intervener, claimant to a valid and subsisting lien, which is junior to the lien of the Plaintiff.**" (Emphasis in original).

¶ 12       McDuffie filed several motions attempting to stay the sale of the property. McDuffie also successfully moved to consolidate the mortgage foreclosure case (No. 12 CH 30435) with Case No. 14 CH 08257.

¶ 13       On May 28, 2015, Thomas filed a petition for Chapter 7 bankruptcy. On June 18, 2015, Cook County circuit court judge Sanjay Tailor entered an order staying all circuit court cases

involving Thomas (Case Nos. 14 CH 08257, 12 CH 30435, 13 M1 728715, 13 CH 21415) and placing them on the bankruptcy stay calendar.

¶ 14    In the bankruptcy proceedings, McDuffie filed an adversarial complaint objecting to discharge of any debt owed to him on grounds that the debt was procured by fraud. The bankruptcy court held a bench trial on McDuffie's adversarial complaint. It entered a directed ruling in favor of Thomas.

¶ 15    On December 18, 2015, the bankruptcy court lifted the stay as to the foreclosure effective January 22, 2016. Upon motion by Fannie Mae, Case Nos. 12 CH 30435 and 14 CH 08257 were removed from the bankruptcy stay calendar on November 21, 2016, and proceeded under a new case number, 16 L 11453. In addition, Case No. 13 CH 21415 was removed from the bankruptcy calendar and renumbered as 17 L 011658. Case No. 13 M1 728715 was renumbered as 17 L 011661. These cases were consolidated into Case No. 16 L 11453. Fannie Mae moved to allow the sale of the property based on the prior judgment of foreclosure, over McDuffie's objection. On May 30, 2017, the court (Judge Diane Shelley) lifted the stay on the sale of the property.

¶ 16    Although several different attorneys represented McDuffie during the various proceedings over the years, on May 16, 2017, David Kadzai filed an appearance on behalf of McDuffie. McDuffie attempted to stay the sale before both Judge Loftus and before Judge Shelley. Judge Loftus struck the motion for lack of jurisdiction. McDuffie voluntarily withdrew his motion before Judge Shelley and was ordered to prove-up his interest.

¶ 17    The property was sold at a public sale on July 27, 2017, resulting in an *in rem* deficiency of $74,875.89. Fannie Mae filed a motion for approval of sale. On December 5, 2017, Judge Shelley entered an order in Case No. 16 L 11453 approving the sale, entering a deficiency

judgment for Fannie Mae, and ordering McDuffie vacate possession within 30 days. Upon McDuffie's motion, the date of possession was extended to January 26, 2018.

¶ 18     Meanwhile, on May 24, 2017, McDuffie, through his attorney Kadzai, filed a motion for a default judgment against Thomas in the renumbered Case No. 16 L 11453, related to his claims of fraud and breach of contract. The motion stated that McDuffie filed a complaint on November 21, 2016, which was served on Thomas on December 20, 2016, and that Thomas failed to respond within 30 days. The record reflects that notice of the motion was sent to Thomas's business address, but not to his attorney of record.

¶ 19     On June 8, 2017, Judge Shelley granted McDuffie's motion for default against Thomas in Case No. 16 L 11435. The court held a prove-up hearing on July 28, 2017. McDuffie, represented by Kadzai, testified that Thomas defrauded him and McDuffie had made substantial improvements to and payments on the property.

¶ 20     Following the hearing, Judge Shelley entered a judgment on August 8, 2017, in the amount of $207,000 in favor of McDuffie and against Thomas based on the allegations of fraud. The court found that Thomas fraudulently induced McDuffie to execute the lease agreement knowing the property was going into foreclosure, that Thomas assured McDuffie that he would take care of the foreclosure issue and induced McDuffie to make further payments and improvements, and that Thomas extinguished his rights to the property without disclosing this to McDuffie. The order further stated that pursuant to an agreement with Fannie Mae, the judgment would be incorporated into the judgment of foreclosure as a valid lien against the property.

¶ 21     However, Thomas moved to vacate the August 8, 2017, default judgment and the June 8, 2017, order of default pursuant to section 2-1301 (735 ILCS 5/2-1301 (West 2016)). Thomas also moved to disqualify attorney Kadzai from representing McDuffie due to his prior

representation of Thomas in relation to the foreclosure property. In addition, Thomas moved for sanctions under Supreme Court Rule 137 against McDuffie and Kadzai. Thomas contended that McDuffie's claims of fraud had been fully litigated in McDuffie's adversarial complaint filed in the bankruptcy case; the bankruptcy court held a full trial on the claims on December 12, 2016, and entered an order in favor of Thomas and against McDuffie. In fact, the bankruptcy court entered a directed verdict in favor of Thomas after McDuffie's case-in-chief. Thomas also argued he could not be held personally liable for McDuffie's claims because the bankruptcy court entered an order discharging Thomas from bankruptcy on December 15, 2016. Thomas asserted that McDuffie nevertheless continued to pursue his fraud claims against Thomas, in bad faith. Thomas argued that the trial evidence from the bankruptcy proceeding showed that, prior to entering into the lease agreement, McDuffie viewed the property and indicated that he was a contractor and that the condition of the property was no problem. However, McDuffie failed to make rent payments and began making unauthorized alterations to the property in violation of the lease. Thomas verbally and in writing warned McDuffie not to make any further unauthorized alterations to the property. McDuffie never informed Thomas of a decision to exercise the option to purchase. Due to McDuffie's failure to pay rent, Thomas was forced to file the forcible detainer action. Thomas argued that the evidence showed, and the bankruptcy court found, that he never made any reassurances to McDuffie that the mortgage would be paid.

¶ 22    Additionally, Thomas argued in his motions to vacate, disqualify Kadzai, and for sanctions that McDuffie has asserted essentially the same fraud allegations against Thomas in seven different lawsuits (12 CH 30435, 12 M1 728715, 13 CH 21415, 14 CH08257, Thomas's bankruptcy case; McDuffie's adversarial complaint in the bankruptcy case (16 A 00147), and McDuffie's appeal of the adversarial case). Thomas argued that McDuffie's litigiousness has

allowed him to remain in possession of Thomas's property for over five years without making the requisite rental or use and occupancy payments. Thomas noted that Kadzai's notice of motion for default failed to state a date of mailing or indicate it was sent to Thomas's attorney, and Thomas and his counsel received no notice of the motion for default, default order, or default judgment against him. Thomas and his counsel later discovered that McDuffie and Kadzai took advantage of the re-captioning of the cases on November 21, 2016, after the bankruptcy stay was lifted to induce the court to enter the June 8, 2017, order of default and August 8, 2017, default judgment. Thomas asserted that in McDuffie's motion for default, McDuffie stated that "[o]n November 21, 2016, Plaintiff filed a complaint against Defendant," that Thomas was served on December 20, 2016, and that Thomas has not appeared or answered in the lawsuit. Thomas asserted that these statements were blatantly false as McDuffie filed his verified complaint for specific performance on May 14, 2014; it was merely renumbered or re-captioned as Case No. 16 L 11453 on November 21, 2016. Further, Thomas filed an appearance on June 12, 2014, and filed an answer to the complaint on February 9, 2015. Thomas argued that McDuffie and Kadzai made additional factual misrepresentations and demonstrated bad faith by disregarding and failing to disclose to the trial court the fact that the bankruptcy court had imposed a stay, that the bankruptcy court had held a full trial on the merits of McDuffie's claims and found against him, and that the bankruptcy court had entered an order discharging Thomas from bankruptcy. Thomas argued that the June 8 and August 8, 2017 orders were void and sanctions were appropriate. In support of his motions, Thomas attached affidavits, documents and orders from the bankruptcy court proceedings, and his attorney engagement agreement with Kadzai.

¶ 23        On September 14, 2017, Judge Shelley entered an order in Case No. 16 L 11453 stating that no collection proceedings shall be initiated based on the August 8, 2017, order. However, on

September 22, 2017, McDuffie filed a citation to discover assets against Thomas premised on Judge Shelley's August 8, 2017, order, and wrote her name on the judge's signature line.[1]

¶ 24    On the same day, Judge Loftus entered an order regarding a motion McDuffie had filed to stay enforcement of the order of possession. Judge Loftus noted the convoluted procedural posture of the various cases, consolidations, transfers, orders, and motions before different judges involved in these related matters over five years "currently hangs in a penumbra between "marginally implausible" and "thoroughly incoherent." Judge Loftus ordered that Case No. 16 L 11435 should be transferred to Judge Shelley in Commercial Calendar W, which would also transfer the consolidated Case Nos. 12 CH 30435, 14 CH 08257, and 13 M1 728715. Further, Judge Loftus vacated the order approving sale of the property entered on August 21, 2017, because when Fannie Mae filed its motion for approval of sale, it was before the wrong court. Judge Loftus ordered that the judicial sale would stand and Fannie Mae could re-motion in the proper court for approval.

¶ 25    On October 2, 2017, Fannie Mae filed a motion for approval of sale of the property before Judge Shelley. On December 5, 2017, Judge Shelley entered an order approving the sale of the property and an order of possession to Fannie Mae no sooner than 30 days from that date. Upon motion by McDuffie, the date of possession was extended to January 26, 2018.

¶ 26    On January 26, 2018, Judge Shelley entered an order in Case No. 16 L 11453 (1) vacating the order of default against Thomas and the August 8, 2017, default judgment against Thomas; (2) prohibiting any efforts to collect on the judgment; (3) dismissing with prejudice all claims by McDuffie against Thomas for specific performance and fraud based on the bankruptcy

---

[1] We observe that McDuffie filed a motion to modify the August 8, 2017, order to state that Kadzai erroneously drafted the order to provide that judgment was against Thomas, when it should have stated that a junior lien of $207,000 existed against the property, and that Kadzai further erroneously stated that the imposition of the junior lien was with the agreement of Fannie Mae. We observe that Kadzai also filed a petition for sanctions under Rule 137 on August 2, 2018, against Thomas.

proceeding; (4) disqualifying Kadzai as attorney for McDuffie; and (5) finding that the conduct by McDuffie and Kadzai was sanctionable "for the reasons stated on the record." It ordered Thomas's attorney to file an attorney fee petition. The order continued the matters of entry of sanctions and use and occupancy.[2]

¶ 27 On February 26, 2018, McDuffie filed, through attorney Kadzai, a motion to reconsider the trial court's January 26, 2018, order pursuant to section 2-1203 (735 ILCS 5/2-1203 (West 2016)). The motion was titled "PLAINTIFF'S COMBINED MOTION FOR RECONSIDERATION OF JANUARY 26, 2018 COURT ORDER AND MOTION TO CLARIFY JANUARY 26, 2018 ORDER PURSUANT TO ILLINOIS SUPREME COURT RULE 137." McDuffie argued that he did not file a citation to discover assets in an attempt to collect the judgment against Thomas in violation of court order, he maintained that he did not file any new cases against Thomas after the bankruptcy stay was lifted and he was free to pursue any claims besides fraud, and indicated that the trial court was the one which entered an order stating that the default judgment was against Thomas personally. McDuffie argued that disqualification of Kadzai as his attorney was not necessary because Thomas failed to show that any confidential information was learned or used against him. McDuffie argued that the trial court's January 26, 2018, order failed to specify the court's reasons for imposing sanctions and it was unclear what conduct resulted in sanctions.

¶ 28 Thomas filed a petition for attorney fees along with supporting affidavits and billing invoices related to defending against the default. He also filed a prove-up concerning use and

---

[2] On January 26, 2018, McDuffie filed a *pro se* notice of appeal in case no. 16 L 011453 from the December 5, 2017, order of possession and approving sale. In the appeal, *Federal National Mortgage Association v. McDuffie,* no. 1-18-0211, this court entered an order April 17, 2018, staying all proceedings related to use and occupancy during the pendency of that appeal and ordering McDuffie to pay $1,650 per month in use and occupancy. Ultimately, the case was dismissed for want of prosecution and mandate was issued on March 22, 2019.

occupancy. Judge Shelley entered an order granting Thomas's petition and reserving determination of the amount.

¶ 29     Judge Shelley held a hearing on the issues of McDuffie's motion for reconsideration, attorney fees, and use and occupancy on July 12, 2018.

¶ 30     Following the hearing, Judge Shelley issued an 18-page memorandum opinion and judgment order on December 4, 2018. Judge Shelley conducted an extensive review of the procedural history and actions of McDuffie and Kadzai. The court found that McDuffie had pursued essentially the same claims of fraud and breach of contract against Thomas in at least seven different lawsuits and/or forums, that McDuffie had created confusion and wasted judicial resources by filing claims *pro se* and through his various attorneys, by filing duplicate motions in matters before different judges, and by taking inconsistent positions.

¶ 31     With respect to the foreclosure case, Judge Shelley determined that Judge Loftus had not granted McDuffie, as an intervenor, a lien in its judgment of foreclosure, but, rather, specified that he merely had an "interest" that was junior to Fannie Mae's. The trial court found that once the bankruptcy stay was lifted and Fannie Mae filed a notice of sale, Kadzai and McDuffie attempted to block the sale by filing claims against Chase in the foreclosure case and motions to stay in the related cases. The trial court observed that McDuffie finally removed his objections to the sale when he reached an agreement with Fannie Mae that it would not object to McDuffie asserting a junior lien against the property. Judge Shelley determined that the judgment of foreclosure precluded any potential lien McDuffie could have on the property under section 15-1509(c) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1509(c) (West 2016)). The trial court also rejected McDuffie's argument that he had an equitable lien due to his improvements on the property because the mortgage lien was recorded first and the lender never

asked McDuffie to improve its collateral. The trial court next rejected McDuffie's claim that any alleged debt that Thomas owed due to McDuffie's alleged improvements to the property was exempt from discharge in bankruptcy due to fraud. The trial court observed that McDuffie had raised this claim in his adversarial complaint in Thomas's bankruptcy proceeding, which went to trial and at which McDuffie testified at length. However, even under the lesser standard of proof applicable to the dischargeability of a fraud claim in bankruptcy, the bankruptcy court entered a directed verdict for Thomas. Judge Shelley also determined that *res judicata* applied and barred McDuffie from relitigating his claims. The bankruptcy discharge voided any debt owed to McDuffie and prohibited commencement of any future actions. Accordingly, Judge Shelley concluded that the order of default and default judgment entered against Thomas were due to McDuffie's and Kadzai's failure to disclose the adversarial trial or that debt had been discharged, and that they violated Rule 137 by filing a motion for default that was "neither reasonably well-grounded in fact nor warranted by existing law."

¶ 32       With regard to sanctionable conduct, the court held that based on the record, the parties' briefs, and the argument and testimony provided at the hearing, sanctions under Rule 137 were appropriate in connection with filing the motion for default, for filing documents objecting to vacating the default judgment, and filing documents to collect on the judgment. The trial court noted that McDuffie presented the trial court with an affidavit, through Kadzai, on July 20, 2017, asking the court to find he performed under the contract and was entitled to damages against Thomas for breach of contract and fraud, and McDuffie also testified to the same in court. The trial court held there was no good-faith, legal basis for seeking a judgment against Thomas after the bankruptcy discharge, and the affidavit was presented in bad faith and was an objectively unreasonable application of law. In addition, the trial court noted that McDuffie filed a citation to

discover assets on September 22, 2017, in direct violation of the trial court's order that no collection proceedings should be taken related to the default judgment until a hearing was held on Thomas's motion to vacate. The trial court observed that McDuffie also violated court orders in directing a special process server to deliver a copy of the citation to Fannie Mae and also prepared a judgment to which he affixed the court's name and filed with the recorder of deeds. The trial court found that these documents violated Supreme Court Rule 137.

¶ 33        Concerning Kadzai, the trial court noted that he filed the motion for default and documents objecting to the judgment being vacated. The trial court found that Kadzai knew or upon reasonable investigation should have known that a judgment could not be entered against Thomas and the motion for default lacked a good faith basis, and this conduct violated Supreme Court Rule 137. The trial court noted that McDuffie testified that he informed Kadzai about the bankruptcy proceedings and one of McDuffie's previous attorneys also testified that she discussed the bankruptcy court's rulings in detail with Kadzai. The trial court also noted that Kadzai only sent documents to Thomas's business address and Kadzai's initial response to the motion to vacate argued that Thomas was attempting to abuse the process, which showed Kadzai lacked credibility. When Kadzai finally admitted the impropriety of his pleadings, he filed a motion to modify the order, but failed to notice it up before the court, and he later filed another motion on February 26, 2018, in which he stated that the trial court refused to amend the judgment. The trial court found that Kadzai was not acting in good faith and that Kadzai's and McDuffie's objections to Thomas's request that the judgment be vacated were not in good faith or based on any reasonable interpretation of the law.

¶ 34        The trial court further denied Kadzai's motion to reconsider its ruling disqualifying him from representing McDuffie in this case, noting that Kadzai had represented Thomas at the

initiation of the foreclosure proceeding and was paid $2,200. In later representing McDuffie, he asserted an interest materially adverse to Thomas. The trial court held that this was "a hornbook example of an attorney breaching his duty of loyalty by representing his former client's adversary in the same litigation."

¶ 35    On the issue of attorney fees under Supreme Court Rule 137, the trial court reviewed the affidavits and billing invoices submitted by Thomas's attorney related to defending against the default judgment. Kadzai and McDuffie failed to respond or provide counter-evidence. Based on the experience of Thomas's attorney, the nature and difficulty of the issues, and the usual and customer charge for such services, the trial court determined that Thomas was entitled to attorney fees in the amount of $8,014.50 and costs of $1,226.55 for the period through January 2018. He was also entitled to attorney fees in the amount of $8,647.50 and $768.18 in costs for the period of January 26, 2018 to July 13, 2018.

¶ 36    Regarding the use and occupancy issue, the trial court determined that Thomas was entitled to use and occupancy for the period of September 2014 to January 2016 (sixteen months) at $3,500 for a total of $56,000.

¶ 37    On December 26, 2018, McDuffie filed a *pro se* "response to the memorandum opinion and judgment order dated December 4, 2018," in which he objected to the December 4 order. McDuffie filed a timely notice of appeal in this court on December 31, 2018, from the December 4, 2018, order. McDuffie also filed a motion to reconsider the December 4, 2018, memorandum opinion and order on January 3, 2019. The trial court entered an order on January 10, 2019, finding it had no jurisdiction to review these motions.

¶ 38    We observe that on appeal, McDuffie presents an incomplete, argumentative statements of facts in his opening brief. Illinois Supreme Court Rule 341(h)(6) requires the statements of

facts to be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Jan. 1, 2016). While we may strike a statement of facts or dismiss an appeal based on violations of Rule 341(h)(6), we will not do so in the present case because McDuffie's failure to abide by this rule does not hinder our review. However, we will disregard any noncompliant portions of petitioners' statement of facts in our review. See *O'Gorman v. F.H. Paschen, S.N. Nielsen, Inc.*, 2015 IL App (1st) 133472, ¶ 80; *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009).[3]

¶ 39    Additionally, we observe that a report of proceedings for the July 12, 2018, hearing was not included in the record on appeal. Any doubts raised by the insufficiency of the record must be resolved against the appellant, who bears the burden of presenting this court with a sufficiently complete record of the trial court proceedings to support his claims of error. *Midstate Siding & Window Co. v. Rogers,* 204 Ill. 2d 314, 319 (2003) (citing *Foutch v. O'Bryant,* 99 Ill. 2d 389, 391-92 (1984)). Where issues on appeal relate to what occurred during a hearing or proceeding, the lack of a transcript or other record of that proceeding compels this court to presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.*

¶ 40                                    II. ANALYSIS

¶ 41    At the outset, we note that Thomas did not file a brief in this case. However, since the record is simple and the case can be decided without the aid of an appellee's brief, we have elected to review this case on appellant McDuffie's brief alone.

¶ 42    On appeal, McDuffie contends that the trial court abused its discretion in awarding sanctions pursuant to Rule 137. However, before we may reach the merits of this argument, we

---

[3] We further note that, despite the trial court's ruling on the disqualification issue, Kadzai is representing McDuffie on appeal.

observe that McDuffie also argues on appeal that the trial court erred in denying his motion to reconsider the imposition of sanctions or obtain clarification as to their basis. After the trial court entered the December 4, 2018, memorandum opinion and judgment, McDuffie filed on December 26, 2018, what he titled a "response to the memorandum opinion and judgment order dated December 4, 2018," wherein he objected to the December 4 order. He also filed a timely notice of appeal within 30 days from the December 4 order on December 31, 2018. He then filed a motion to reconsider the December 4 order pursuant to section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/211203 (West 2018)) on January 3, 2019. On January 10, 2019, the trial court entered an order finding it had no jurisdiction to review his motions.

¶ 43    This court has an independent duty to consider jurisdictional issues, even when not raised by the parties, as is the case here. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67. Whether a court has jurisdiction is an issue of law reviewed *do novo*. *Heartland Bank & Trust v. The Leiter Group*, 2014 IL App (3d) 130498, ¶ 13.

¶ 44    This court has jurisdiction to hear appeals of final judgments, from which a party may appeal as of right pursuant to Supreme Court Rule 301 (Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). *Heartland Bank*, 2014 IL App (3d) 130498, ¶ 13. The filing of the notice of appeal is the jurisdictional step that initiates appellate review. *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.,* 182 Ill. 2d 6, 7 (1998). Generally, when a notice of appeal is filed, "the appellate court's jurisdiction attaches *instanter,* and the cause of action is beyond the jurisdiction of the circuit court[,]" however, the circuit court retains jurisdiction to consider collateral and incidental matters. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173-74 (2011). Under Illinois Supreme Court Rule 303, the notice of appeal must be filed within 30 days of entry of the final judgment or after an order is entered "disposing of the last pending postjudgment motion

directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). Pursuant to Rule 303(a)(2):

> "When a timely postjudgment motion has been filed by any party, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion *** becomes effective when the order disposing of said motion or claim is entered. *** [W]here a postjudgment motion is denied, an appeal from the judgment is deemed to include an appeal from the denial of the postjudgment motion." Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017).

¶ 45   McDuffie's motions filed on December 26, 2018, and January 3, 2019, constituted postjudgment motions as they requested the trial court reconsider its December 4, 2018, judgment and they were timely filed within 30 days of the December 4 judgment. A postjudgment motion "requests a rehearing, retrial, modification or vacation of the judgment and must be 'directed against the judgment." (Internal quotation marks omitted). *Heartland Bank*, 2014 IL App (3d) 130498, ¶ 13. "Under section 2-1203 of the Illinois Code of Civil Procedure, a post-trial motion must be filed within 30 days of a final judgment." *Lajato v. AT & T, Inc.*, 283 Ill. App. 3d 126, 131 (1996) (citing 735 ILCS 5/2-1203 (West 1994)). Although he filed his notice of appeal before he filed his January 3, 2019, motion to reconsider and after his December 26, 2018, "response to the memorandum opinion***," and before the trial court decided either motion, this did not divest the trial court of jurisdiction. Under Rule 303, the postjudgment motions merely delayed the effectiveness of his notice of appeal until after the trial court ruled on the motions. Thus, in the present case, the trial court erroneously held that it lacked jurisdiction to rule on McDuffie's postjudgment motions to reconsider the December 4, 2018,

judgment because he had filed a notice of appeal. See *Chand v. Schlimme*, 138 Ill. 2d 469, 474-77 (1990) (where appellant simultaneously filed a timely posttrial motion and a notice of appeal, circuit court retained jurisdiction until it disposed of post-trial motion—although the prior version of Rule 303 required the filing of a new notice of appeal); *In re County Treasurer & Ex Officio County Collector of Cook County*, 308 Ill. App. 3d 33, 45 (1999) (observing that where a motion to reconsider would have been pending at the time notice of appeal was filed, the notice of appeal "would have been of no effect."); *Davis v. Davis*, 2019 IL App (3d) 170744, ¶¶ 22-23 (where wife filed timely postjudgment motion for sanctions after husband filed notice of appeal, trial court erroneously dismissed sanctions motion on grounds it lacked jurisdiction; court had jurisdiction to rule on sanctions motion and notice of appeal would become effective after trial court ruled on sanctions motions).

¶ 46    "Whether to grant a postjudgment motion lies within the discretion of the trial court." *McDonald v. Health Care Service Corp.*, 2012 IL App (2d) 110779, ¶ 29. Accordingly, although we have jurisdiction over this appeal, we must vacate the trial court's order finding it lacked jurisdiction to address the postjudgment motion and remand the cause to the trial court to rule on the merits of the postjudgment motion. *McDonald*, 2012 IL App (2d) 110779, ¶ 29. "It would be fundamentally unfair to [the appellant] for this court to usurp the trial court's function in exercising its discretion to grant or deny the postjudgment motion." *Id.* ¶ 30. "Where a trial court erroneously believes it has no discretion or authority to perform some act, the appellate court should not preempt the exercise of such discretion, but should remand the cause back to the trial court." *Greer v. Yellow Cab Co.*, 221 Ill. App. 3d 908, 915 (1991)). "The appellate court must not usurp the trial court's function in exercising its discretion." *Id.* But see *Davis*, 2019 IL App (3d) 170744, ¶ 23 (where trial court erroneously found it lacked jurisdiction to address

postjudgment sanctions motion because notice of appeal was already filed, appellate court found it prudent to address sanctions motion on appeal without remand based on wife's request that remand would prolong proceedings and allow husband additional means to delay paying sanctions, considering husband's filing of dubious complaint against wife and meritless appeal of its dismissal).

¶ 47 In ruling, we note that under Illinois Supreme Court Rule 274 (eff. Jan. 1, 2006), "[a] party may make only one postjudgment motion directed at a judgment order that is otherwise final." In the case at bar, McDuffie essentially filed *two* postjudgment motions directed at the December 4, 2018, order. As such, we conclude that the December 26, 2018, postjudgment motion was properly before the trial court and the trial court had jurisdiction to address its merits. However, McDuffie's second postjudgment motion filed on January 3, 2019, was not properly before the court under Rule 274.[4]

¶ 48 III. CONCLUSION

¶ 49 For the foregoing reasons, the trial court's failure to exercise its discretion to rule on the merits of the motion to reconsider requires us to vacate the January 10, 2019, order and remand the cause for the trial court to rule on the merits of the postjudgment motion.

¶ 50 Vacated and remanded, with directions.

---

[4] We additionally note that McDuffie's motion filed on February 26, 2018, was styled as a "motion to reconsider" the trial court's January 26, 2018, order and seeking clarity about the basis for sanctions. If the January 26, 2018, order was a final order, the two motions to reconsider that he filed after entry of the December 4, 2018, order would not be allowed as successive postjudgment motions under Rule 274. However, because the trial court in the January 26, 2018, order left unresolved issues related to the imposition of sanctions under Rule 137 and use and occupancy, the January 26, 2018, order was not a final order. See Ill. S. Ct. R. 303(a) ("A judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a).") Accordingly, the trial court's December 4, 2018, order was the final order in the case at bar because it resolved all of the pending issues, including sanctions, the amount of sanctions, and use and occupancy.